Good morning, counsel. Good morning. May it please the Court. My name is Lisa Duran, and I represent the petitioner Israel Escobar-Contreras. I'd like to try to reserve two minutes for rebuttal. All right. Try to keep track of it yourself. I'll remember. I'll try to remind you. Very good. Now we're in the world of suspension. This is different from the cancellation of removal case that was discussed in the previous argument. Back in the day, an alien who had a long-term physical presence in the United States could establish that he'd be entitled to permanent residency based on his own hardship, hardship to the alien. That's what we have in this case. This is a case of a – and the government points this out at great length. We have a single man who was – had long-term permanent – not permanent residence in the legal sense, but long-term physical residence in the United States. He had established significant community ties, professional ties, and different relationships in Phoenix as we lived. What happened is he had a lawyer, whom we claim committed ineffective assistance of counsel, who unilaterally decided to move the suspension case up to Las Vegas.  Our client didn't understand what a suspension case was. What's the prejudice of that? I'm sorry, sir? What is the prejudice? The prejudice is the very prejudice that's defined in the legal definition, which is that you're deprived of your ability reasonably to present your case. The extreme hardship determination for an individual like this is really going to – first of all, a judge makes the determination based on the aggregate of factors and what one would do when one presented a suspension case would be bring in the people with whom this individual interacted in his daily life, the people he worked with, the people from his church, the neighbors. Well, they brought some. Didn't they bring the two people from the company? Right. Mr. Escobar brought one of his employers, one of his supervisors, with him to the hearing. But there were problems with that, too, Your Honor. Mr. Penn, the attorney who represented Mr. Escobar in the hearing before the immigration judge, did not prepare the client prior to his hearing, did not have any attorney client privilege to contact with the client at all, according to the client. And these are really the only facts in the record, because, Mr. – we did comply with the elements of the matter of Losada. We did file a bar complaint. And Mr. Penn had the opportunity to respond and say that all of these things were  Well, that's – no, no, we're – again, I said this, assuming – my question assumes that there was ineffective assistance. And the question is, what do you need beyond that to show that it affected the outcome in any way? Do you agree that you have to show that there was some consequence of the ineffective assistance? Certainly, Your Honor, prejudice, which shows that the outcome might have been affected. It's not that you have to prove up your case at the BIA on a motion to reopen, which is kind of what the BIA concluded in this case. It's difficult to prove up a case on paper. You have one shot, really. An alien really had one shot at proving eligibility for suspension. Well, you could say, for instance, in an affidavit, you could say, you know, I have a child here who's on an iron lung or whatever, you know, a respirator, and they don't have that clear showing that there was prejudice as a result. You did present some affidavits. Yes, we did. And do you think they make out a plausible case for relief? Yes, Your Honor, I do think they make out a plausible case for relief. As a commercial litigator most of the time, I will tell you that an affidavit is a bland document. It sits there, and it can't be cross-examined. You can't follow up on it. That's good. It can't be cross-examined, so you can make all kinds of statements that can't be destroyed. You have an advantage with the affidavit. That's right, Your Honor. But referring back to how it works in commercial litigation, typically when someone makes a sworn declaration under penalty of perjury, that declaration is assumed to have been made under penalty of perjury. What you see in the context of this case and other cases that I've seen is that the government, not only the government attorneys, but the immigration judges and the BIA, when they're looking at a sworn document under penalty of perjury, they'll discredit it, just essentially disbelieve it. But isn't what they're saying here, the BIA is basically saying here, even if we assume he was the best neighbor ever, and he's the best friend anyone could have, which is what these people said, because he is an individual, we know there's this incredibly high bar to establish the hardship, and he hasn't done it. They do focus on his job situation, but it's hard to see from this record how more witnesses would have changed the essential calculus, which is he looks like he'd be a great citizen, to be honest. You know, pays his taxes, he works hard, he got his employer to fly out people to Las Vegas. That's extraordinary, frankly. But what evidence did he present to show this hardship to an individual other than he would rather live here than there? Well, the whole process is kind of circular, Your Honor. What happens is you missed your one up because you hired the wrong lawyer, because you're not exactly the most sophisticated consumer of legal services. Well, but, you know, he got all these facts in. So what are the facts that would change? I mean, the BIA is saying, well, just the fact that he's a good neighbor, that doesn't mean, you know, he would have had a thousand of his neighbors testify. It wouldn't have changed it. What is it that he offered up that would show extreme hardship? I mean, what do you think is the essential reason? I think that the man is eligible for suspension of deportation. He's a long-term resident. He was a bilingual English-Spanish speaker. He was extremely valuable in his community. Doesn't he have to show extreme hardship? He does show extreme hardship. And what do you think, Judge McKeown, I ask you, what do you think makes this an extreme hardship case? The problem with the case that you're presenting on paper is you need to establish through, I think, testimony is the best way to do it, all of the factors and many, many more. There are many factors. And I think the biggest issue with Mr. Escobar was, once deprived of the ability to do so before a judge, an immigration judge, in these cases we're down to kind of needing you to describe what it was he proffered up that would be the hardship here. Not that he even he's a nice guy. He's all those things. But that doesn't, you know, get you past the finish line in this kind of a case. Well, if I'm understanding, Your Honor, you're asking what one factor did he prove that established. No.  What in combination, what would he have proven that would meet the hardship requirement for individuals in the context of some of these other cases that the service has already decided? In the aggregate, he would have proved what other individuals for whom reported cases have been written. Such as? A matter of o general. No, no, no. Facts. The facts. The facts is that he came to the United States relatively young. He was assimilated into American society. He was a law-abiding individual who was a hard worker, was a mentor to other workers in his company. That he was a role model for young Hispanic men in terms of the way. That's all on the record. That makes him the kind of person you would want to have in this country if you had a sensible policy. But what does it have to do with extreme hardship? Well, I would submit in the aggregate that is to deport someone like that to Mexico who has a long-term career here, he's not employable. The BIA said they disregarded the affidavit of his employer. Well, that's the question. If that's the first thing I think you said that would qualify as extreme hardship. If he were being deported and he were unemployable, that might well qualify. Now, didn't the BIA find, though, that that's not correct? That he would be able to be employed in Mexico? Yeah. They assumed that he would, but there were no facts to support that. Well, do you think we can overturn that finding and say that they were wrong when they said he would be able to get a job in Mexico? I think the BIA, I understand the BIA has a tremendous amount of discretion, Your Honor, but I think that there is a tremendous amount of speculation that goes on in BIA opinions. We have a factual affidavit by the owner of the company, a company that builds 2,000 homes a year in Arizona. We're in Arizona. We're right next to Mexico. He's telling you that frame construction doesn't prevail. This is a master carpenter, Israel is, Mr. Escobar, and that this kind of construction doesn't prevail in Mexico. And the BIA says, no, we don't agree because a guy like that has to be able to get work in Mexico. I don't think that that is a proper exercise of discretion. I mean, I read it as conjecture, speculation, which all your cases say can never substitute for substantial evidence. All right. Thank you. I forgot to tell you about your two minutes for rebuttal. Okay. We'll give you at least one. Ten seconds, I see. Thank you. We'll give you at least one minute. May it please the Court, Victor Lawrence again for the Attorney General. You sure you don't want to really keep this guy here? He sounds like he'd be pretty valuable. No, Your Honor. No, I didn't think so. There's always hope. I understand. In this case, Your Honor, the Board did not abuse its discretion in denying the motion to reopen as there was nothing arbitrary, irrational, or contrary to law about the decision. This petitioner had a full and fair opportunity to present his case first before the immigration judge and an additional opportunity before the Board. Now, the petitioner's claims of a due process violation through ineffective assistance of counsel are inapplicable in this case because under Supreme Court precedent, which the petitioner never addressed in her reply brief or today in court, a claim of ineffective assistance of counsel can only constitute cause if there's an independent constitutional violation, such as where there's a constitutional right to counsel and there's been a deprivation of counsel. No such violation exists in this case. Also, there's no liberty interest that's implicated in the denial of discretionary relief. Simply put, the government does not have a responsibility to ensure that petitioner was represented by competent counsel and the petitioner may not impute the failings of his privately retained counsel to the government. But despite all that, even if you consider the fact that the government has no liberty interest, it's not a liability interest. What's all the Lozada business about if there's no such thing as ineffective assistance of counsel? Well, Lozada, I believe, came out before the Supreme Court's case in Coleman v. Thompson. Coleman v. Thompson, his Supreme Court case, came in the criminal setting but clearly said that you cannot impute the failings of privately retained counsel to the government in the case where there's no constitutional right to counsel. There's no constitutional right to counsel in immigration proceedings. Therefore, I am fully aware that this Court also has had decisions which seem to assume that there can be a claim of ineffective assistance of counsel and have a due process violation. But this Court has never considered the Supreme Court precedent of Coleman v. Thompson. That Court can't. What year was Coleman v. Thompson? What year was it? Yes. 1991. And we've been issuing decisions for the last, I don't know how many years, saying there's ineffective assistance of counsel. That's correct, Your Honor. And has the government ever objected to those? Or is this the first time? This may be the first time. Well, what gave this bolt of lightning? Bolt of lightning? Well, as I said, the Coleman case came up in the criminal setting. So it took a while. About 13 years ago. Correct. And since then, we've been regularly saying it's a basis for setting it aside and remanding if there was ineffective assistance. And you met the Lozada test. And all of those decisions by this Court have had a rather perfunctory analysis. Oh, okay, ineffective assistance of counsel. And the government has never disagreed with those until we're fortunate enough today to have you here? That is correct, in this circuit. I'd point out, though, that the Seventh Circuit in the case of Stroh v. INS, there's an opinion by Judge Posner in which he lays out this issue. He made a cost-benefit analysis? He examined whether or not there is a right to have an ineffective assistance of counsel claim, a due process violation, with respect to this Supreme Court opinion in Coleman. And it was his analysis that there probably was not that right. Do you think this is your? No. They didn't actually decide that, did they? It was decided on another issue. Right. So, I mean, like, here, we have, as Your Honor said, we have all this language that sounds like Lozada, that if it was so fundamentally unfair as a result, you know, then there might be a claim for remand. Even if there were such a cause, we wouldn't have to reach that here, would we? I think that's correct, Your Honor. You would not have to reach the issue of whether or not. That's not your best argument for this case, is it? You've got a better one? Well, I mean, on the merits? I think I have two strong arguments. I do think if you take a look at Coleman v. Thompson, it does preclude an ineffective assistance of counsel claim, because there's no right to counsel in immigration proceedings. But I'll move on to my next argument, because I want to make sure I make that, too. To make sure I understand. So if I don't hear it here, I'll understand it. Sure. At least the framework in another case. Your proposition is if there's no right to counsel. No constitutional right to counsel. Constitutional right to counsel. Like in the Sixth Amendment sense, as there is in criminal proceedings. Then any ineffectiveness or blundering by counsel basically is eradicated and can't be a basis for any relief in an immigration appeal? That's correct. And because the private counsel is just an agent of the immigrant. And any mistakes that are made by that counsel under agency law are mistakes made by the immigrant. It's like habeas. It's like habeas, where you don't have a right to counsel. Therefore, it doesn't matter whether you have bad counsel. That's correct. And that's exactly what the Coleman decision discusses. Yes. And it translates exactly to immigration proceedings, although nobody's raised it before in the circuit. I was just surprised it was suddenly raised in this case when it's not generally argued at all. Governments seem to be perfectly happy to see that people weren't deprived of fairly important parts of their lives with ineffective lawyers. And the U.S. government seemed to think that was reasonable until today. And, Your Honor, the same issue was argued in the Fifth Circuit last week in another case, but the petitioner's name is Assad, A-S-S-A-A-D. So this is a new policy that you're going to promulgate in the various circuits? We're not just the fortunate beneficiaries? I hate to speak for the Attorney General's policy, but the policy of the Office of Immigration and Litigation is clearly that there's this issue that's been raised in Coleman that has not been addressed in other circuits. It's a clear holding in Coleman. No, no, I know. Okay. But that's correct, Your Honor, that no ineffective assistance of counsel claim can lie under those circumstances because there's no constitutional right to counsel in immigration proceedings. Well, you would have to, I think, have that taken care of by an unbanked court in this circuit because it's not as if there's any intervening law. There's nothing new. Coleman's been there for a long time, and we have decisions since then. So I think we'd have to ask for an unbanked to get that, I think, to get that reconsidered. I leave that to you. So maybe since you have two minutes left, you want to get to anything that we might be free to deal with. Sure. The claim that counsel raises about this immigrant having ties to the community, there's no prejudice that's been shown. All these facts came out to the board. The board had an opportunity to consider each and every one of them, even consider the fact of the U.S. citizen's son that that was not raised. Well, counsel says that this person's a master carpenter. The kind of work he does doesn't exist. There's no comparable work in Mexico. And the government can't just say, well, we know he's going to be able to get another job without any facts or any basis, just sort of make it up, that in order to say that he will be able to get another job, there has to be some kind of showing. Well, what do you say to that? Respectfully disagree. Your Honor, the showing that they made was an affidavit of a guy that said this type of work doesn't prevail in Mexico. There's absolutely no showing that this person in the construction industry actually had any knowledge of what goes on in Mexico. There's no showing that he ever even visited Mexico, and specifically that he had knowledge of what goes on in Mexico and what the person could do. But the board reasonably concluded that based on the affidavits that were provided in the motion to reopen, this is a guy who had tremendous experience in construction. He was a foreman of a construction job. I mean, this is somebody, the board looked at that and reasonably determined this is somebody who's not going to have a problem getting a job in Mexico. And there's nothing arbitrary, irrational, or contrary to law about that, which is the standard, the abuse of discretion standard on denial of a motion to reopen. So we respectfully submit that there's no prejudice that's been shown here by this petitioner, even if you think that his counsel was ineffective. We would dispute that, though. We also say that it may have been a tactical decision of why the issue never came up about his American son. The testimony had already come out that the petitioner sends money home to his parents, made no representation that he sends money home to his child, and perhaps the counsel thought that it would reflect bad on his character, because good moral character is a prerequisite of suspension of deportation. And perhaps the counsel thought it would not be good to raise it at this point and only to rely on the hardship to himself. So there's no showing that this was anything but a tactical decision, that it was ineffectiveness. It's just a showing that this testimony did not occur, and that's not good enough under the precedent. And the change of venue, absolutely no prejudice whatsoever. As Judge McEwen pointed out, he did have somebody come out from Phoenix to Las Vegas or another way around, Las Vegas to Phoenix, or Phoenix to Las Vegas, and to testify. He even had an additional person. If you read the transcript, there's somebody else that was going to testify, and for whatever reason, the attorney decided it wasn't necessary. So he had two people come out who were going to testify about his skills, one testify. The other people who didn't testify, they submitted on the motion to reopen those affidavits, were submitted to the board. The board had an opportunity to review them, and in a thorough decision, reviewed those affidavits and determined there's absolutely no prejudice here based on the change of venue. There's nothing arbitrary, irrational, or contrary to law about that decision. Thank you, counsel. Thank you very much. Let me see if I can make two points in my ten seconds. Point number one, what you just heard the government attorney do is what you see in the system generally, not what things that are in the affidavits that really occurred, but what might have occurred and why that might have been. The decision not to mention that Mr. Escobar had a United States citizen's son, you know, that could have been tactical. I happen to think that in a case where you're showing harm to the alien, the fact that he has to support a child who's born in the United States is a factor. It's a factor. But there is no tactical explanation for an attorney to unilaterally transfer venue, to take an alien out of his community to one where he doesn't have any contacts for his own convenience. And the second point I want to make is this whole Coleman argument that counsel made. This Court, I think this Court really nailed it in Castro-Orion v. INS when it said this, there is no Sixth Amendment right to counsel in deportation proceedings. Quote, but where the courts declined to see a constitutional remedy, Congress saw a dictate of humanity, and that dictate entitled right to counsel is codified at INA section 292. The legislative history makes clear that Congress intended to confer that right. So that would be my answer to the Coleman argument. And thank you. Thank you, Ken. Thank you. Case to surrogate will be submitted. Next case on the calendar is United States.
judges: Reinhardt, McKeown, Paez